UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



DIGNO QUITUISACA TAPIA, individually and on behalf of all others similarly situated,

    Plaintiff,

-against-

NATIONS ROOF EAST, LLC (D/B/A NATIONS ROOF EAST LLC), et al.,

    Defendants.

21-CV-1358 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    The Court has received and reviewed the parties' joint letter dated May 31, 2022 (Joint Ltr.) (Dkt. No. 65), seeking approval of their amended and fully-executed Settlement Agreement (Ag.) (Dkt. No. 65-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The Agreement requires defendants collectively to pay $50,000 to plaintiff Digno Quituisaca Tapia (inclusive of attorneys' fees and costs) to settle his claims under the Fair Labor Standards Act (FLSA), the New York Labor Law (NYLL), and its implementing regulations. Of that sum, plaintiff's counsel will be reimbursed $16,500, leaving $33,500 for plaintiff himself.

    The financial terms of the settlement were arrived at after arm's-length bargaining at a judicially-supervised settlement conference before me on November 9, 2021. On March 22, 2022, the parties sought judicial approval of their initial written settlement agreement. (Dkt. No. 61.) On March 30, 2022, they consented to my jurisdiction for all purposes (Dkt. No. 60), and on May 31, 2022 – after a conference to discuss certain terms of the initial agreement – they submitted the joint letter and amended Agreement now before the Court.

    The Court finds the financial terms of the Agreement fair and reasonable. The cash compensation is lower than plaintiff's claimed unpaid wages, which his counsel calculated to be as much as $77,725. Joint Ltr. at 2. However, plaintiff faced a number of litigation risks that

could have prevented him from recovering anything close to that sum. or example, plaintiff's principal claim was that he was not properly compensated for the time he spent driving a company van from defendants' premises to various jobsites (and back). However, the parties sharply contest the time that plaintiff spent driving the van. *See id.* at 1-2. Under these circumstances, the settlement amount is fair and reasonable.[1]

The non-economic terms of the settlement are also fair. While the initial version of the document (Dkt. No. 61-1) contained a one-way general release in defendants' favor, the Agreement now before the Court satisfactorily includes mutual general releases. Plaintiff will release defendants "from any and all actions . . . in law or in equity," including, "without limitation, any claims from or relating in any way to his employment relationship or the termination of his employment relationship with Defendants[.]" Ag. § 1. Defendants, in turn, will release plaintiff from "any and all actions . . . in law or in equity," including, "without limitation, any claims arising from or relating in any way to plaintiff's employment relationship or the termination of his employment relationship with Defendants." *Id.* As I have noted in the past, mutual general releases can be appropriate in a non-class FLSA settlement where the plaintiff is

---

[1] *See, e.g.*, *Ramos v. DNC Food Serv. Corp.*, 2022 WL 576300, at *2 (S.D.N.Y. Feb. 25, 2022) (approving gross settlement payment equal to approximately 20% of plaintiffs' "total possible damages" where "existing time and pay records . . . could potentially limit the amount of damages on certain aspects of Plaintiffs' claims") (internal quotation marks omitted); *Villa Clemente v. Midtown E. NY LLC*, 2020 WL 5913595, at *2 (S.D.N.Y. Oct. 6, 2020) (partial settlement by which plaintiffs would increase their total recovery to approximately one-half of their alleged unpaid wages was fair in light of "significant factual disputes as to the hours worked by the plaintiffs and the accuracy of defendants' computerized time records"); *Aguilar v. N & A Prods. Inc.*, 2019 WL 5449061, at *1-2 (S.D.N.Y. Oct. 24, 2019) (approving settlement of approximately 7% of maximum recovery based on, *inter alia*, disputes about the number of hours that plaintiff worked); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (net settlement of 25% of plaintiff's maximum recovery was reasonable where, among other contested issues, the parties disputed the hours worked by plaintiff).

no longer employed by the defendants. *See, e.g.*, *Plizga v. Little Poland Rest. Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016).

The Agreement also contains a time-limited no-rehire clause, in which plaintiff "waive[s] all rights and claims to reinstatement as an employee . . . with Defendants . . . for 2 years post the Court's approval of this settlement agreement." Ag. § 4. Although no-rehire clauses are frowned upon in FLSA settlements, *see, e.g.*, *Martinez Aguilar v. VBFS Inc.*, 2020 WL 1036071, at *1 (S.D.N.Y. Mar. 3, 2020), in this case the provision does not render the Agreement unfair to the plaintiff, as it prohibits him from employment for only two years, and is limited only to the two intertwined companies named as defendants herein, which (in defendants' estimation) represent "less than 2% of the entire New York City roofing market." Joint Ltr. at 3. Thus, this provision's "impact on plaintiff's future career opportunities is not substantial." *Flores v. Food Express Rego Park, Inc.*, 2016 WL 386042, at *2 (E.D.N.Y. Feb. 1, 2016) (approving settlement with permanent no-rehire clause as to one company).

There is also a mutual non-disparagement clause, in which the parties agree not to "make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements" about one another. Ag. § 8. The non-disparagement clause is acceptable, because it includes a broad carve-out permitting the parties to make "truthful statements" about "the claims and defenses asserted in this action." *Id. See Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016) (non-disparagement clause in FLSA settlement "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating h[is] case") (internal quotation marks omitted; modifications in original). Further, defendants agree to provide "[n]eutral [r]eferences" for plaintiff in connection with employment inquiries. Ag. § 6.

The proposed award for attorneys' fees and costs is 33% of the total cash settlement payments (lower than the percentage permitted by the retainer agreement between plaintiff and his counsel, *see* Dkt. No. 65-2 at ECF page 3), which represents 1.87 times counsel's reported lodestar, as revealed by the attorney time records submitted to the Court. (*See* Dkt. No. 65-3.) Given the degree of success obtained in this action, the award is not excessive.

Having carefully reviewed the financial and non-financial terms of the Agreement, the Court finds that they are fair and reasonable as required by *Cheeks*, 796 F.3d at 199. Accordingly, the parties' joint request (Dkt. No. 65) is **GRANTED** and the proposed settlement is **APPROVED**. Pursuant to Agreement § 3, defendants shall remit the settlement payment to plaintiff promptly after the entry of this Order; no later than **five days thereafter**, the parties shall file a joint stipulation of dismissal with prejudice for the Court to so-order.

Dated: New York, New York  
       June 10, 2022

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**

4